Morris E. Spector, J.
Motion by respondents to confirm the report of the Official Referee and for judgment thereon is denied and petitioner’s cross motion is granted in all respects.
The matter was referred to the Official Referee to determine whether petitioner was proceeding in good faith “ and as to whether he has been afforded, in the examination before trial, an adequate inspection of the books and records in question ” (emphasis added).
The Official Referee has found that petitioner was not proceeding in good faith and that the petitioner “ has been afforded an adequate inspection * * * in the examination before trial in the stockholders’ suit pending in the Supreme Court, New York County” (emphasis added).
The unconcluded examination before trial referred to applies to a derivative stockholders’ suit brought by petitioner in behalf of all stockholders. The question of good faith applies to this article 78 proceeding brought by petitioner as a stockholder in his individual capacity.
The Referee bases his findings of lack of good faith upon the fact that petitioner had free access to the books and records prior to the various litigations and upon petitioner’s failure to complete the aforesaid examination before trial by taking steps to obtain rulings on the objections to the production of said books and records, and suggests that petitioner complete said examination. However, the Referee concludes his report by stating “ and that he has been afforded an adequate inspection of the books and records in the examination before trial in the stockholder’s suit pending in the Supreme Court, New York County.” This is wholly inconsistent. In one paragraph he suggests that petitioner obtain rulings as to the impropriety of the objections to produce the books and records, and in the *176 next paragraph he states that the petitioner has been afforded an adequate inspection of the books and records in the examination before trial in the stockholder’s suit pending in New York County. Even to give the word “ afforded” the most liberal interpretation in this connection presupposes a favorable ruling and a compliance with said ruling.
' It should be noted at the outset, that the matter was not referred for the purpose of determining whether petitioner could obtain the information in the future in the examination pending in the derivative stockholder’s action, but whether he had had an adequate inspection prior to the commencement of this proceeding. The Referee’s suggestion that the petitioner complete the examination before trial belies both the respondents’ allegation that an adequate inspection has already been afforded and the Referee’s finding.
The Official Referee’s finding that the petitioner was proceeding in bad faith because he failed to complete the examination before trial in the derivative stockholder’s action before instituting this proceeding would be an erroneous finding as a matter of law. This proceeding was instituted by petitioner in his individual capacity as a stockholder, whereas the suit in New York County is in a representative capacity for the benefit of the corporation. There is no relation between the two actions (Tenney v. Rosenthal, 6 A D 2d 510), except that this court would not grant the inspection requested if the information had already been obtained by petitioner in whatever capacity he was proceeding in another action, for then no purpose would be served but the harassment of the respondents. Nor would the court grant the examination if some other improper purpose were shown. Mere access to the books prior to the litigation is not a showing of bad faith, absent a showing that petitioner actually has the information now sought.
The Referee found that petitioner had free access to the books because he made the premises of Necchi his headquarters. This is not borne out by the evidence. Petitioner did not make the premises of Necchi his headquarters. Necchi owned an 11-story building and occupied considerable space therein. However, petitioner and one Krisiloff, secretary and director of Necchi, were engaged in outside ventures and they had space on one of the floors in the Necchi building, not the same space occupied by Necchi. However, petitioner did often visit with Krisiloff in the Necchi space. Petitioner testified that he received information about the Necchi company from talks with Krisiloff and from some accountants’ reports that he received, and that he never saw or asked to see the books of Necchi prior to the *177 demand served just prior to instituting the various lawsuits. Krisiloff, in the examination before trial, testified that he never examined the books and would not understand them if he saw them. When he wanted figures he would get them from the accountant. Therefore the production of the books, pursuant to section 296 of the Civil Practice Act was unnecessary, as they would not refresh his memory. Thus the conclusion that petitioner had free access to the hooks and records is unfounded.
One of the purposes of sending this motion to the Referee to report as to whether the petitioner is proceeding in good faith was because the president of Necchi, in his answering affidavit, stated that petitioner was interested in a concern known as Franklin Sewing Machine Co., Inc., which handles Necchi and Elna machines and also competitive sewing machines. However, petitioner testified that Franklin was a Necchi dealer and sold no competitive machines, and the respondents introduced no evidence to controvert this, and in fact conceded that Franklin was not a competitor but a licensee of Necchi. Necchi never revoked the license of Franklin to this day.
The fact that petitioner in the derivative suit (where he is suing for the benefit of the corporate entity) might complete the examination before trial is, as we have stated, irrelevant. Furthermore, in the derivative suit, Mr. Justice MoGivehn said “ The pendency of this action [the stockholder’s suit] does not preclude plaintiff from seeking, in a proceeding under article 78 of the Civil Practice Act, the broader inspection of the books of such corporations to which he is entitled as a stockholder.” (Weistrop v. Necchi Sewing Mach. Sales Corp., 2 Misc 2d 312, 315 [1955], affd. 1 A D 2d 822 [1st Dept., 1956].)
The learned Justice ruled further, in this motion for a discovery and inspection: “The denial of the instant motion is without prejudice to any proceeding plaintiff [Weistrop] may choose to bring under article 78 of the Civil Practice Act, to an examination before trial with incidental production of hooks and records as authorized by section 296 of the Civil Practice Act, or to a new application for discovery and inspection based upon a showing that specific documents containing relevant evidence are required and that an examination before trial has proved to be an inadequate remedy.” In Matter of Lloyd v. H. T. E. Beardsley, Inc. (258 App. Div. 954), the relief under article 78 was denied not because of the prior derivative suit, but because the petitioner was alleged to be a competitor of the respondent.
The burden of proving had faith is on respondent. In Matter of Durr v. Paragon Trading Corp. (270 N. Y. 464, 469), the *178 court stated: ‘ ‘ There can be no doubt that the court might in the exercise of a sound discretion refuse to issue such a mandamus order if the defendants sustained the demals and allegations contained in the answering affidavits. The question is whether the court may grant a peremptory order without affording the defendant an opportunity to sustain these denials and allegations ” (emphasis added).
In Matter of Tate v. Sonotone Corp. (272 App. Div. 103, 105, cited by respondents) the court stated: “It is not intimated that the burden is on the stockholder affirmatively to show his good faith.” In Matter of Schulman v. Dejonge & Co. (270 App. Div. 147, 149 [Cohn, J.]) the court likewise pointed out that it was the respondent who had the burden of sustaining the charges made.
Furthermore, the examination before trial was circumscribed. Judge Hecht refused to permit inquiry relevant to Necchi Sewing Circle, Inc. Petitioner alleges that Necchi Sewing Circle, Inc., was a dealer but was given distributors’ discounts (which were 17%% greater); that this company received the benefit of much free advertising, which was paid for by the parent company. True, this company was finally absorbed by the parent company. However, it may be that the parent company was guilty of waste and mismanagement in its prior dealings with this company or in its acquisition of this company.
What is the petitioner seeking by this inspection? Is he interested in trade secrets or customers lists? No! Petitioner is a stockholder in Necchi Sewing Machine Sales Corp. and Elna Sewing Machine Co., Inc., but is neither an officer nor director in either. He owns about 10% of the stock in Necchi Sewing Machine Sales Corp., which has never declared a dividend, and 6% of the stock of Elna. The individual respondents are not only officers and directors of the two corporations but are in complete control of the management and operation thereof. The individual respondents also own and control over a dozen corporations that do business with Necchi.
Necchi and Elna have a common office and, for the most part, a common staff. Petitioner contends: (1) that Elna’s profits are the same as Necchi’s, although Necchi does over three times as much business and that this is as a result of improper allocation of expenses between the two corporations, and (2) that in dealings between Necchi and the other corporations owned and controlled by the individual respondents there are excessive advertising allowances granted and (3) one of these corporations is merely a dealer (Necchi Sewing Circle, Inc.) but wrongfully *179 received the additional 17%% discount allowed only to distributors. All of these alleged practices may be proven justified as good business practices. However, petitioner charges respondents with wrongful self-dealing. This is a closely held corporation — only four stockholders — tantamount to a partnership. These allegations are a proper basis for an inspection of the corporate books pursuant to article 78 of the Civil Practice Act.
As to the first contention, petitioner further points out that Elna had a tax loss when acquired by the parties, and that therefore the individual respondents, who between them own a greater share of Etna’s stock than they own of Necchi’s stock, have a twofold reason for wishing to transfer the profits from Necchi to Elna.
The fact that the individual respondents did, on behalf of Necchi, deal with corporations they owned; the fact that Necchi and Elna use the same staff, facilities and outlets; the fact that Necchi- and Elna each showed the same net although Necchi did three times the gross sales, all warrant the inspection sought.
Eespondents refer to pages 46 and 111 of the transcript of the hearings before the Eeferee to sustain their allegation that this proceeding was brought for the purpose of coercing the respondents. The Eeferee has made no finding on this point and apparently he has not placed any reliance upon said testimony.
The Eeferee gives no reasons for his finding of bad faith upon the part of petitioner. See sections 470 and 440 of the Civil Practice Act, which state that the Eeferee’s report “ shall comply with the requirements as to a decision by the court in a like case ’ ’ and that the decision ‘ ‘ must state the facts which it deems essential”. The only facts set forth in the Eeferee’s report which can be taken as a basis for his finding of bad faith are: (1) the statement that he has considered the petitioner’s direct and cross-examination, and (2) that the petitioner has failed to obtain rulings on the objections raised on the examination before trial and has not thus completed the examination, and (3) that petitioner had access to the books prior to the commencement of the litigation.
The Eeferee’s statement that the petitioner “has been afforded an adequate inspection of the books and records ” is a mere conclusion and not based upon the evidence. The record of the examination before trial in the stockholder’s derivative action is replete with refusals to produce the books and records requested, for any purpose. This was not an examination before *180 trial but a frustration. There were over 400 objections by counsel for respondents in a 351-page record. It was more of a colloquy between counsel than an examination of a witness.
In the afore-mentioned hearing, the witness admitted that the books and records would disclose the information sought, but counsel refused to produce them.
To say that the petitioner could obtain rulings from the court and thus obtain the books and records (presupposing the rulings were favorable) is far from a finding that the petitioner “has been afforded an adequate inspection of the books and records in question”. Thus, admittedly, the petitioner not having actually examined the books and records in the examination before trial, it cannot be said that he is proceeding in bad faith in his article 78 proceeding.
The limited use of books and records allowed under section 296 of the Civil Practice Act, whereby “ the books and papers or any part or parts thereof may be offered and received in evidence in addition to the use thereof by a witness to refresh his memory ’ ’ is much smaller in scope than the examination which may be permitted under article 78 of the Civil Practice Act.
The report of the Referee is not binding on this court, although great weight is given to the reports of Referees, especially on the issue of credibility. This court cannot confirm the findings of a Referee unless they are supported by the record and are legally correct. From all of the foregoing it appears that the respondent has failed to sustain the burden of proving bad faith and that the Referee’s findings are erroneous as a matter of law.